UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>    1617 John F. Kennedy Blvd., Suite 520<br>    Philadelphia, PA 19103<br><br>                              Plaintiff,<br><br>                    v.<br><br>GEORGE W. HAYWOOD,<br>    920 I Street NW, Apt. 1010<br>    Washington, D.C. 20001<br><br>                              Defendant. | Civil Action No. 1:22-cv-01971 |

**COMPLAINT**

Plaintiff Securities and Exchange Commission (the "Commission") files this Complaint against Defendant George W. Haywood ("Haywood") and alleges as follows:

**SUMMARY**

1. This action involves insider trading by Haywood in the securities of Neurotrope, Inc. ("NTRP"), a clinical-stage biopharmaceutical company in which Haywood was a significant investor.

2. On a telephone call on January 22, 2020, Haywood learned from NTRP's chairman that NTRP would be conducting a registered direct offering of stock shares later the same day. Haywood expressly agreed to refrain from trading on the information he had learned or disclosing it to others.

3. Haywood understood that the offering would be a dilutive event, likely resulting in the price of NTRP's stock dropping.

4. Mere minutes after learning this material nonpublic information and agreeing not to trade on it, Haywood called his broker and began selling his NTRP holdings.

5. In the hour between learning of the offering and when it was announced, Haywood sold 105,197 shares of NTRP's stock at an average price of $3.12 per share. Haywood attempted to sell another 495,905 shares, but his orders did not execute before NTRP announced the offering.

6. That afternoon, NTRP announced the offering and its stock price dropped to a low of $1.38 per share, closing at $1.42 per share.

7. Haywood's illegal trading caused him to avoid losses of approximately $179,297.

8. By engaging in the conduct described in this Complaint, Haywood violated, and unless enjoined will continue to violate, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**JURISDICTION AND VENUE**

9. The Commission brings this action pursuant to Sections 21(d), 21(e), and 21A of the Exchange Act [15 U.S.C. §§ 78u(d)–(e), 78u-1] seeking a final judgment that permanently enjoins Haywood from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint, prohibits Haywood from serving as an officer or director of any entity having a class of securities registered with the Commission pursuant to Section 12 of the Exchange Act or that is required to file reports pursuant to Section 15(d) of the Exchange Act, orders Haywood to pay disgorgement, prejudgment interest, and a civil monetary penalty, and awards any other relief the Court deems appropriate.

10. The Court has jurisdiction pursuant to Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d)–(e), 78aa].

11. Venue is proper pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa], because certain of the acts, practices, and courses of business constituting the alleged violations occurred within the District of Columbia.  Haywood resides in the District.

## DEFENDANT AND RELEVANT ENTITY

12. George Haywood, age 69, is a private investor who lives in Washington, D.C.

13. During the relevant time period, NTRP was a Nevada corporation, with its principal place of business in New York, and was traded on NASDAQ.  As a result of a December 2020 transaction, NTRP is now known as Synaptogenix, Inc. and is traded under the ticker SNPX on NASDAQ.

## TERMS USED IN THIS COMPLAINT

14. Common stock is a form of equity ownership in a corporation.

15. A "limit order" is an order to buy or sell a stock or option at a specific price or better.  A sell limit order can only be executed at the limit price or above.  A limit order is not guaranteed to execute.

## FACTS

16. Haywood is a private investor with extensive experience with the public securities markets.  That experience includes approximately 40 years of securities trading, leadership positions at prominent Wall Street firms, and as a member of the board of directors of at least three public companies.

17. During the relevant period, Haywood controlled numerous brokerage accounts held in his own name, jointly with family members, and in the name of family members or close associates.

18. As of January 21, 2020, Haywood owned or controlled approximately 2.4 million shares of NTRP, accounting for about 19% of NTRP's approximately 13 million shares outstanding.

19. On January 21, 2020, NTRP's stock closed at $1.45 per share.

20. At 9:00 a.m. on January 22, 2020, NTRP announced that it had been awarded a $2.7 million grant from the National Institute for Health following positive clinical trial results for its Alzheimer's treatment. On this news, NTRP's stock price rose to a high of $3.85 per share.

21. Unknown to the market at that time, NTRP was organizing a registered direct offering of approximately 11 million shares to raise approximately $18 million. Based on the size and value of the offering, it would be dilutive to existing shareholders and lower the price of NTRP's stock.

22. Information relating to NTRP's registered direct offering, including the fact of the offering, was confidential and nonpublic.

23. Among other precautions NTRP took to maintain the confidentiality of the information, NTRP limited the number of individuals who had access to information about the offering and undertook a process whereby it made individuals agree to keep the information confidential prior to sharing information about the offering with them.

24. At 12:50 p.m. on January 22, 2020, the chairman of NTRP's board of directors ("NTRP Chairman") called Haywood. NTRP Chairman told Haywood that he had material, nonpublic information regarding NTRP that he would share if Haywood agreed that he would keep the information confidential and not trade on it.

25. Haywood agreed that he would keep the information confidential and not trade on it.

26. NTRP Chairman thereafter informed Haywood about the offering and invited Haywood to participate. The call lasted about eight minutes.

27. About one minute after hanging up with NTRP Chairman, Haywood called his stock broker in New York. The conversation lasted about two minutes. At Haywood's direction, his broker entered an order at 1:03 p.m. to sell 74,736 shares of NTRP out of an account Haywood held jointly with one of his daughters. About one minute later, the entire order executed, resulting in Haywood selling 74,736 shares of NTRP at $3.15 per share.

28. In the interim, at approximately 1:01 p.m., NTRP Chairman sent Haywood an email confirming Haywood's oral agreement during the phone call to maintain the confidentiality of the offering information:

> Pursuant to our discussion and as an inducement to obtain confidential investment information, this will confirm that you have agreed to keep the information to be disclosed/discussed as confidential and have agreed to not disclose the content of this information to any party not bound by our agreement. Furthermore, you agree not to use the information presented in connection with any investment outside the nature and scope of the proposed investment opportunity. This agreement shall terminate at the earliest of the public release of the information discussed or the completion/termination of the proposed offering.

29. At approximately 1:08 p.m., NTRP Chairman sent Haywood two additional emails that attached, among other things, the draft Securities Purchase Agreement and Purchase Warrant for the offering.

30. At 1:11 p.m., at Haywood's direction, his broker entered another limit order to sell 49,150 shares of NTRP, with a limit price of $3.10 per share, out of an account Haywood held jointly with another daughter. That order executed on 11,220 shares at $3.10 per share.

31. Haywood had phone calls with his broker again at 1:12 p.m. and 1:14 p.m. At Haywood's direction, at 1:18 p.m., his broker entered a limit order to sell 477,216 shares of NTRP that Haywood owned personally, with a limit price of $3.10 per share.

32. The 477,216 shares accounted for approximately 38% of Haywood's personal holdings of NTRP (not including those he held jointly with family members) and approximately 19% of all the NTRP stock that he owned (individually or jointly) or controlled.

33. Haywood's order to sell 477,216 shares of NTRP executed on 6,202 shares before NTRP's stock price dropped below the $3.10 per share limit price, at which point Haywood modified the order to change the limit price to $3.02 per share. Haywood sold another 13,039 shares at an average price of $3.03 per share before NTRP's stock price dropped below the revised limit price.

34. Haywood made two further modifications to this partially filled order while in possession of material, nonpublic information. At 1:36 p.m. he lowered the limit price to $2.95 per share, and at 2 p.m. he amended the order to sell just 30,000 shares with a limit price of $2.78 per share. Neither of the revised orders resulted in additional sales.

35. At 2:05 p.m. on January 22, 2020, NTRP announced the $18 million registered direct offering. Haywood did not participate in the offering.

36. Immediately prior to the announcement, NTRP's stock was trading at approximately $2.70 per share. Following the announcement, it dropped to a low of $1.38 and closed the day at $1.42 per share.

37. By breaching his express agreement not to trade based on NTRP's material, nonpublic information, Haywood avoided losses of approximately $179,297. Had he been

successful in selling all the NTRP shares that he sought to sell while in possession of material, nonpublic information, Haywood would have avoided losses of approximately $1 million.

## Haywood Violated the Federal Securities Laws

38. At all relevant times, Haywood owed a duty to NTRP not to use the material, nonpublic information shared with him for his own benefit, including by trading on the basis of that information.

39. The information about NTRP's registered direct offering was nonpublic. NTRP maintained the confidentiality of the information through appropriate policies and procedures, including, but not limited to, requiring individuals to agree to maintain the confidentiality of, and not trade on, the information prior to providing them the information.

40. The information about NTRP's registered direct offering was material. A reasonable investor would have viewed information relating to NTRP's registered direct offering as being important to his or her investment decision and/or significantly altering the total mix of information available to the public.

41. Haywood knew, or was reckless in not knowing, that he had a duty not to trade on the basis of the material, nonpublic information about NTRP's registered direct offering by virtue of his express agreement not to use the information for his own benefit.

42. In breach of his duty to NTRP, Haywood sold NTRP securities on the basis of the material, nonpublic information about NTRP's registered direct offering.

43. Haywood, directly or indirectly, made use of the means and instrumentalities of interstate commerce or of the mails in connection with the acts, transactions, practices, and courses of business alleged in this Complaint, including but not limited to participating in interstate phone calls as described above.

## CLAIM FOR RELIEF

**Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

44. The Commission re-alleges and incorporates by reference the allegations in paragraphs 1 to 43, as if fully set forth herein.

45. By engaging in the conduct described above, Haywood, directly or indirectly, in connection with the purchase or sale of securities, and by use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, has, knowingly or recklessly:

    a. employed a device, scheme, or artifice to defraud;

    b. made an untrue statement of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or

    c. engaged in an act, practice, or course of business which operated or would operate as a fraud or deceit upon any person.

46. By reason of the foregoing, Haywood has violated and, unless enjoined, will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

### I.

Permanently restraining and enjoining Haywood from directly or indirectly engaging in conduct in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5];

**II.**

Prohibiting Haywood from serving as an officer or director of any entity having a class of securities registered with the Commission pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)], pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)].

**III.**

Ordering Haywood to disgorge his ill-gotten gains and pay prejudgment interest thereon;

**IV.**

Ordering Haywood to pay a civil penalty pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; and

**V.**

Granting such other and further relief as this Court may deem just, equitable, or necessary in connection with the enforcement of the federal securities laws.

**JURY DEMAND**

Pursuant to Rule 39 of the Federal Rules of Civil Procedure, Plaintiff demands that this case be tried to a jury.

Dated: July 7, 2022                                  Respectfully submitted,

/s/ *Karen M. Klotz*
Gregory Bockin (D.C. Bar No. 450885)
Karen M. Klotz (D.C. Bar No. 7379985)
Julia C. Green
Norman P. Ostrove
U.S. SECURITIES AND EXCHANGE COMMISSION
Philadelphia Regional Office
1617 John F. Kennedy Boulevard, Suite 520
Philadelphia, PA 19103
Phone: 215-597-3100
Fax: 215-597-2740
Email: BockinG@sec.gov
            KlotzK@sec.gov

*Counsel for Plaintiff*
*U.S. Securities and Exchange Commission*